UNITED STATES of America; The State of New York, and UDC–Love Canal, Inc., Plaintiffs,

v.

HOOKER CHEMICALS & PLASTICS CORPORATION; Hooker Chemicals Corporation; Occidental Petroleum Investment Corporation: The City of Niagara Falls, New York; Niagara County Health Department; and The Board of Education of the City of Niagara Falls, Defendants.

No. CIV–79–990C.

United States District Court, W.D. New York.

Dec. 22, 1987.

U.S. Dept. of Justice, Environmental Enforcement Section, Land and Natural Resources Div. (Bruce Gelber, of counsel), Washington, D.C., and Robert Abrams, Atty. Gen. of State of N.Y. (Eugene Martin-Leff, Asst. New York State Atty. Gen., of counsel), New York City, for plaintiffs.

Piper & Marbury (Thomas H. Truitt, of counsel), Washington, D.C., for defendants Hooker Chemicals & Plastics Corp., Hooker Chemicals Corp., and Occidental Petroleum Inv. Co.

Gellman, Brydges & Schroff (Earl W. Brydges, Jr., of counsel), Niagara Falls, N.Y., for the City of Niagara Falls.

Phelps, Gray & Hewitt (Benjamin N. Hewitt, of counsel), Niagara Falls, N.Y., for Bd. of Educ. of the City of Niagara Falls.

CURTIN, Chief Judge.

On November 23, 1987, Special Master John Sexton issued a ruling following a discovery dispute between the parties regarding certain types of questions defendants seek to have answered by plaintiffs' witnesses during deposition testimony (Item 562). These questions asked whether or not plaintiffs' experts 1) "agreed with" certain health, epidemiological, or habitability evidence, or 2) used such evidence, in whole or in part, as a basis for their own beliefs.

Although attorneys for the State argue that answers to these questions were irrelevant to issues appropriately covered in Phase I [liability] discovery, the Special Master disagreed and ruled that the governments' witnesses answer such questions, subject to the limitation that defendants' counsel would not be permitted to ask follow-up questions about the nature of the underlying health, epidemiological, or habitability evidence (Item 462, pp. 3–4).

He concluded:

the question goes to [the government witness's] views of (that is, his state of mind vis a vis) the epidemiologic evidence, rather than to the probative weight and validity of the evidence itself. A State Official's views of the health risk (and at least the general basis of those views) seem clearly related to the liability stage—even if those views are based upon wholly unreliable analysis. The discoverability of such conclusory views, it seems to me, is severable from the discoverability of the health, epidemiologic and habilitability evidence itself. Only the latter question is before the Court on December 15. So long as the stipulated limit is observed, there is little danger that the questioning will encroach upon the material covered by the Motion before the Court. In the interim, at least some additional questioning can proceed.

Item 462, p. 4.

Plaintiffs disagree and ask that the court reverse the Special Master's ruling and uphold their objections (Item 470). They contend that their witnesses' examination "on their opinion of, or state of mind as to, epidemiological evidence" is wholly irrelevant to Phase I discovery. *Id.*, at page 2.

While the governments' argument is well taken, I now affirm the ruling of the Special Master. As Professor Sexton stated in making his November 2nd ruling, while the discovery in this case has been divided into "liability" and "damages" sections or phases, it is unavoidable that a certain amount of overlap between these areas occur. At the same time, I believe that the Special Master used good judgment in making ex-

plicit that the defendants' ability to ask very general questions about the witnesses' opinions of various health, epidemiological, and habitability evidence did *not* also permit an exploration of the validity of the underlying evidence itself. This court believes that this represents a sensible solution which allows the parties to get on with the business of completing discovery as quickly as possible, while also preserving the distinction between Phase I and Phase II-type questions. In my view, this bifurcation of discovery is an important means by which this case may be handled and resolved in a coherent and systematic manner. This court has and will continue to take the question of bifurcation very seriously. The parties should act accordingly.

So ordered.